IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON, | No. 87131-5-I |
| Respondent, | |
| v. | |
| JEREMY JAMES ORLA VANZANT VOPLE AKA JEREMY JAMES ORLA VANZANT-VOLPE, | UNPUBLISHED OPINION |
| Appellant. | |

BOWMAN, A.C.J. — A jury convicted Jeremy James Orla Vanzant-Volpe of first degree assault and drive-by shooting. Vanzant-Volpe appeals, arguing he is entitled to a new trial because the trial court erred by admitting statements he made during a police interview. Because Vanzant-Volpe did not challenge the admissibility of his statements below and fails to show manifest constitutional error under RAP 2.5(a), we decline to consider the issue and affirm the trial court's judgment and sentence.

FACTS

On March 25, 2023, Alexander Carson asked 21-year-old Vanzant-Volpe to pick up himself and another person[1] at the Upper Park Apartments in Tacoma. Vanzant-Volpe drove to the apartments and picked up the two men in his black Kia Sportage. Carson sat in the front passenger seat and the other male sat in

_____

[1] The other passenger's identity is not in the record.

the back seat behind Vanzant-Volpe. Both men were wearing ski masks, which, according to Vanzant-Volpe, was not "unusual" for "people around [his] age."

Vanzant-Volpe drove the group to the War Pony Smoke Shop, where Carson recognized Treyvon Clark. Carson handed Vanzant-Volpe a ski mask, and he put it on. As Vanzant-Volpe approached the drive-through window at the War Pony, Carson told him to back up and park, which he did. Carson then pulled out a handgun modified to operate as an automatic weapon and placed it on his lap. Carson instructed Vanzant-Volpe to follow Clark, who was driving a BMW. Vanzant-Volpe began following the BMW and then stopped because he "didn't feel comfortable following it [any]more."

Carson then directed Vanzant-Volpe to drive to another location. Vanzant-Volpe did not know where they were going but followed Carson's directions. They ended up at Clark's residence. As Clark walked toward his house, Vanzant-Volpe drove by, and Carson shot at Clark out of the Kia's front passenger window 19 times. A bullet entered Clark's forehead.[2] Vanzant-Volpe then sped down an alley, drove back to the Upper Park Apartments, and removed any identifiable stickers from the rear window of his car. When officers arrived at Clark's home, his grandfather showed them a video of the incident from the home's security surveillance system.

On March 28, 2023, police stopped Vanzant-Volpe's Kia in Des Moines, detained him, and read him his *Miranda*[3] rights. Officers then brought Vanzant-

---

[2] Clark survived but was partially paralyzed and sustained lasting cognitive impairments.

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Volpe to the Tacoma Police Department, where Detective Michael Young and Detective Randall Frisbie interviewed him. The detectives again informed Vanzant-Volpe of his *Miranda* rights. Vanzant-Volpe also signed an "Advisement of Rights" form and agreed to speak with the detectives.

During the beginning of the interview, Vanzant-Volpe answered questions about his car, family, and residence. But as the detectives asked more questions about the shooting, Vanzant-Volpe eventually stopped answering them. The detectives criticized his silence, urging him to talk.

About two hours into the interview, Vanzant-Volpe twice asked if he could call someone, but the detectives said no. The first time, Vanzant-Volpe asked, "I can't make no call or nothin' right now?" A detective responded, "Uh, no. We're in here talkin' right now," and said that "what you can't do is sit here and doing what you're doin' now." Shortly after, Vanzant-Volpe asked again to make a call:

[Vanzant-Volpe]:    I just want to make a call, bro.

[Detective]:    And you can't do that till this is over with. We'll let you make a call when this is over with.

[Vanzant-Volpe]:    There's no other day we can do this . . . , huh?

[Detective]:    What's that?

[Vanzant-Volpe]:    There's no other day we can do this?

[Detective]:    There's no other day we can do this man, today's the day.

One of the detectives said that "the only way to make it better is . . . to get through it."

After several hours, Vanzant-Volpe answered the detectives' questions about the incident.[4] He explained how he put on the ski mask, followed Carson's driving directions, heard Carson fire shots, and fled the scene. Vanzant-Volpe insisted that he made a "mistake" and admitted that he removed the stickers from the rear window of his Kia because he was scared and "didn't know what . . . to do."

On March 30, 2023, the State charged Vanzant-Volpe with first degree assault and drive-by shooting. On October 5, the State amended the information, adding a first degree attempted murder charge. The State also charged Carson and tried Vanzant-Volpe and Carson together as codefendants.

On May 2, 2024, Vanzant-Volpe moved under CrR 3.5 to suppress his statements to the police. The court held a hearing to determine the admissibility of the statements. At the hearing, the State argued that Vanzant-Volpe made a knowing, intelligent, and voluntary waiver of his *Miranda* rights before the detectives interviewed him. Vanzant-Volpe's counsel stated, "As to Mr. Vanzant-Volpe's statements . . . , we do not have a basis to contest any of the information provided today."

On May 6, 2024, the case went to a jury trial. Before the trial began, the court entered its findings of fact and conclusions of law under CrR 3.5. It found that Vanzant-Volpe waived his *Miranda* rights and concluded that his statements

---

[4] It is unclear from the record how long the interview with the detectives lasted. Vanzant-Volpe first asked to make a call at page 68 of the 257-page transcript of the interview. At page 117, one of the detectives said that they were "[t]wo and a half hours in here, three hours in[to]" the interview. Vanzant-Volpe started answering the detectives' questions about the incident at page 189.

to the detectives were admissible at trial.  At trial, the court admitted the interview transcript as an exhibit, and Detective Frisbie testified about Vanzant-Volpe's interview statements.  Vanzant-Volpe testified on his own behalf.  During closing, the prosecutor discussed Vanzant-Volpe's interview statements.

On May 23, 2024, the jury convicted Vanzant-Volpe of first degree assault and drive-by shooting but acquitted him of first degree attempted murder.  On August 2, the trial court sentenced him to 153 months' imprisonment, which included a 60-month firearm enhancement.

Vanzant-Volpe appeals.

ANALYSIS

Vanzant-Volpe argues the trial court erred by admitting statements he made during the police interview after he equivocally invoked his *Miranda* rights. He contends that article I, section 9 of the Washington Constitution requires police to stop interrogating a person who ambiguously invokes their rights and to limit any questions to clarifying the person's requests.  The State argues that Vanzant-Volpe waived this argument under RAP 2.5(a) because he failed to raise it below and cannot show manifest constitutional error.  We agree with the State.

Generally, we will not consider issues raised for the first time on appeal. RAP 2.5(a); *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007).  But an exception exists if a party raises a manifest error affecting a constitutional right. RAP 2.5(a)(3).  To establish manifest constitutional error, the defendant must "identify a constitutional error and show how the alleged error actually affected

the defendant's rights at trial." *Kirkman*, 159 Wn.2d at 926-27. An error is manifest when it is "unmistakable, evident or indisputable." *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992). Our focus is on whether the error is "so obvious on the record" that it warrants appellate review. *State v. O'Hara*, 167 Wn.2d 91, 99-100, 217 P.3d 756 (2009). It is not our role to address claims where the trial court could not have foreseen the potential error. *Id*. at 100.

Under the Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution, a defendant has a right not to incriminate themself. U.S. CONST. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself."); WASH. CONST. art. I, § 9 ("No person shall be compelled in any criminal case to give evidence against himself."). Before any custodial interrogation, an officer must read a suspect his *Miranda* rights, informing him that " 'he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning.' " *State v. Piatnitsky*, 180 Wn.2d 407, 412, 325 P.3d 167 (2014) (quoting *Miranda,* 384 U.S. at 479). Any waiver of *Miranda* rights must be knowing, voluntary, and intelligent. *Id.*

Even if a suspect waives their *Miranda* rights, they can still invoke their rights "at any point during the interview and the interrogation must cease." *Piatnitsky*, 180 Wn.2d at 412. But in *Davis v. United States*, the United States Supreme Court held that such an invocation must be unequivocal. 512 U.S. 452, 459, 462, 114 S. Ct. 2350 (1994). The Court explained that "[i]f the suspect's

statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning." *Id.* at 461-62.

Here, Vanzant-Volpe waived his *Miranda* rights and agreed to talk with the police. For the first time on appeal, he argues that article I, section 9 of our constitution provides greater protection than the Fifth Amendment, such that police must stop questioning a suspect even if they equivocally invoke their *Miranda* rights. We disagree.

Our Supreme Court has made clear that "the protection of article [I], section 9 is co-extensive with, not broader than, the protection of the Fifth Amendment." *State v. Earls*, 116 Wn.2d 364, 374-75, 805 P.2d 211 (1991); *see also State v. Easter*, 130 Wn.2d 228, 235, 922 P.2d 1285 (1996) (we interpret the Fifth Amendment and article I, section 9 "equivalently").[5] And in *State v. Radcliffe*, our Supreme Court held that the United States Supreme Court's decision in *Davis* governs how a suspect can invoke their *Miranda* rights. 164 Wn.2d 900, 902, 907, 194 P.3d 250 (2008) (citing *Davis*, 512 U.S. at 459).

In *Piatnitsky*, our Supreme Court "maintain[ed] that *Davis* controls our analysis" of whether a suspect invokes their *Miranda* rights.[6] 180 Wn.2d at 413 (citing *Davis*, 512 U.S. at 459). The court emphasized that to invoke *Miranda* rights, a suspect must do so "unambiguously." *Id.* It said that an invocation must

---

[5] For this reason, we decline Vanzant-Volpe's invitation to engage in a *Gunwall* analysis. *See State v. Gunwall*, 106 Wn.2d 54, 61-62, 720 P.2d 808 (1986) (providing six factors the court considers to determine whether, in a given situation, our state constitution "should be considered as extending broader rights to its citizens than does the United States Constitution").

[6] In *Piatnitsky*, our Supreme Court also stated that while "both *Radcliffe and Davis* dealt with the invocation of the right to counsel, we draw no distinctions between the invocations of different *Miranda* rights." 180 Wn.2d at 413.

be "sufficiently clear" for a reasonable police officer in the circumstances to understand that the statement is an invocation of *Miranda* rights. *Id.* And an ambiguous or equivocal statement does not amount to invocation requiring the police to end the interrogation or ask clarifying questions about whether the accused wants to invoke their *Miranda* rights. *Id.* at 415.

Because Vanzant-Volpe fails to identify a constitutional error so obvious on the record that it warrants appellate review, we decline to consider the issue under RAP 2.5(a).[7] We affirm Vanzant-Volpe's judgment and sentence.

_____, ACJ

WE CONCUR:

_____        _____

---

[7] Vanzant-Volpe also asks us to extend RCW 13.40.740 (juvenile access to an attorney) and hold that article I, section 9 requires the police to provide counsel to suspects under the age of 25 before any custodial interrogation may occur. He asks us to conclude that any waiver of *Miranda* rights by those under age 25 is "invalid unless it is an express waiver made after consultation with counsel." Because Vanzant-Volpe failed to make this argument below and does not argue manifest constitutional error under RAP 2.5(a), we decline to review the issue.

8